# YVONNE MAVIS KROHN v. BILLY HARLAND KROHN.

169 N. W. (2d) 389.

July 3, 1969—No. 41419.

*Lewis E. Pierce, Robert G. Duncan, Pierce & Duncan, Harris I. Darling,* and *La Velle & Darling,* for appellant.

*Robert Rice* and *Rice & Evans,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

MURPHY, JUSTICE.

This is an appeal from the judgment entered in a divorce action in which the plaintiff-wife, Yvonne Mavis Krohn, sought a divorce and a property settlement. The defendant-husband, Billy Harland Krohn, contends that the trial court erred in granting plaintiff a disproportionate share of the property acquired by the parties during their marriage.

It appears that the parties were married in 1942 and have five children. Three are fully emancipated, and two are minors in the custody of plaintiff. The trial court found that the evidence fully established that defendant treated plaintiff in a cruel and inhu-

man manner within the meaning of Minn. St. 518.06(3) and that plaintiff was entitled to the custody of the minor children, subject to reasonable visitation on the part of defendant. The court awarded plaintiff approximately one-third of defendant's property and granted support money of $100 per month for each child during minority. Plaintiff was also granted alimony of $200 per month during the period from May 1, 1968, to February 1, 1969, when it was anticipated that her needs would be provided for by the division of the property. The record supports the trial court's finding that defendant's net worth at the time of trial was approximately $247,720. Of this property, he awarded plaintiff $82,500, which included an automobile; household furnishings; and a farm having a value of $31,100. The balance was to be paid in cash in periodic installments.

In determining that grounds for divorce existed, the trial court in his memorandum said:

"* * * It is difficult to imagine a more stormy marital relationship than that which the evidence disclosed existed between these parties. The numerous instances of physical abuses, humiliation, embarrassment and ridicule inflicted by defendant on plaintiff, as disclosed by the evidence, clearly established plaintiff's right to a divorce."

In arriving at the disposition of the property, the trial court took into consideration the relative contributions made by the parties to the accumulation of assets acquired during coverture. He observed that, although defendant was an energetic man with "business acumen" who had worked hard to achieve financial success, plaintiff had also "contributed considerable effort and must have favorably supplemented defendant's effort to have made it possible to succeed" in their endeavors. The court also considered the character of plaintiff, about which there was some question. There was evidence which suggested impropriety in her social relations with other men. In connection with this feature of the case, the trial court observed:

"* * * It might be fairly concluded that plaintiff's misconduct was a result of the cruel and inhuman treatment to which she was subjected in the first instance. Nevertheless, such conclusion would more properly be an explanation for plaintiff's misconduct, but does not excuse it."

The court could not agree with plaintiff's demand for equal distribution of the property acquired by the parties and, in explaining his decision, said:

"In arriving at an equitable division of the property the Court found defendant to have a net worth of $247,720.00. Concluding that plaintiff should be awarded one-third of such net worth, the Court determined such amount to be $82,500.00. To achieve such award, and in an attempt to permit defendant to continue a substantial farming operation in which defendant has already proven his ability, the Court has awarded plaintiff the greater portion of such award to be made in cash money. As the Court concluded that the financial burden on defendant would be too burdensome if the defendant had to raise the entire sum in cash money, the Court did award to plaintiff one tract of land of the net value of $31,100.00, the tract awarded appearing to the Court to be the most practical one for the plaintiff to possess and the one which would least interfere with the continued farm operation by defendant. The balance of the award to plaintiff consists of the automobile which both parties seem to agree should be plaintiff's, and a sum of cash money to be paid over an extended period of time."

The principles of law involved in the asserted error raised by defendant have been fully reviewed and discussed in the recent case of Cozik v. Cozik, 279 Minn. 91, 155 N. W. (2d) 471, as well as in Cloutier v. Cloutier, 261 Minn. 324, 112 N. W. (2d) 347. See, 6A Dunnell, Dig. (3 ed.) § 2799a. In both of these cases, the contesting parties had acquired considerable property during coverture. We noted that under Minn. St. 518.58 the trial court is given authority to "make such disposition of the property of the

parties acquired during coverture as shall appear just and equitable, having regard to the nature and determination of the issues in the case." In the Cozik case we determined that the trial court erred by giving to the wife approximately one-half of the husband's assets. In the Cloutier case, under a different fact situation, we sustained the findings of the trial court giving substantially one-half of the property to each of the parties. As we pointed out in Cozik, however, little is to be gained by attempting to arrive at a result on the basis of comparison of property distributions in divorce cases. Each case must be considered in light of its own particular facts.

We have fully examined the record in the case before us and conclude that the trial court carefully considered all of the factors bearing on a fair distribution of the property, and we cannot say, under the circumstances, that he abused his discretion in granting plaintiff approximately one-third of defendant's assets.

On appeal here, defendant does not point to the record and argue that the court erred in the conduct of the trial or that he was prevented from submitting evidence which might have changed the result. The burden of his claim is that, if given another opportunity to try the issues, he would be able to present evidence establishing that the value of his assets was less than the amount found by the trial court. He also indicates that in another trial he might establish that he had greater financial obligations than the evidence in the first trial indicated. We do not find that the arguments submitted before this court warrant our sending the case back for a new trial. The record indicates that throughout the trial of this case defendant took an indifferent attitude with reference to the issue of the value of the property. While plaintiff called a qualified expert witness to establish the value of the farm properties, defendant chose not to submit evidence to the contrary. We gather that counsel for defendant considered that there was some tactical advantage in trying the case as he did. Defendant has failed to call our at-

tention to any error in the trial or to any error in the trial court's decision which would warrant a new trial.

Affirmed.