**Martha J. BOGEN, Respondent,**

v.

**Iver BOGEN, Appellant.**

**No. 47388.**

Supreme Court of Minnesota.

Dec. 30, 1977.

Robert R. Biglow, Minneapolis, for appellant.

Richard W. Greeman and Kenneth C. Barghini, St. Paul, for respondent.

Heard before ROGOSHESKE, KELLY, and MacLAUGHLIN, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

In his appeal in a marriage dissolution proceeding, Iver Bogen seeks to have the marriage declared void ab initio and to set aside as an abuse of discretion the trial court's division of property and award of attorneys fees to his wife, Martha Bogen. We hold that the parties' marriage was validly contracted in Nebraska and find no

abuse of discretion in the division of property or in the award of attorneys fees ordered by the trial court.

Iver and Martha Bogen were married in Omaha, Nebraska, on November 8, 1961, 23 days after the entry of a final decree in Minnesota which dissolved the prior marriage of Martha Bogen. Mr. and Mrs. Bogen were residents of Minnesota on November 8, 1961, and throughout their marriage. On August 9, 1976, the trial court granted Martha Bogen's petition for the dissolution of her 14½-year marriage of Iver Bogen, finding an "irretrievable breakdown of the marriage relationship" under Minn.St. 518.-06. The court dismissed Iver Bogen's counterpetition to have the marriage declared void ab initio. The order for judgment awarded Martha Bogen, then age 44, a $20,-000 cash settlement in lieu of alimony, a remainder interest in the parties' marital condominium, and $2,500 attorneys fees. Iver Bogen, then age 79, was awarded a life estate in the condominium, all of the parties' household furnishings, and all of the assets and interest in the snack food business which he had operated for 44 years, with Martha's assistance for 14½ of those years. After post-trial motions by both parties, a second order, entered October 6, 1976, reinstated the original order for judgment and awarded Martha Bogen an additional $250 attorneys fees to cover the post-trial motion.[1]

The first issue is whether the parties' 14½-year marriage should be declared void ab initio because contracted less than 6 months after Martha Bogen was divorced from her former husband. Her prior marriage was dissolved by a final decree entered in Minnesota. The parties, both Minnesota residents, were married 23 days later in Omaha, Nebraska. Minn.St. 517.03 prohibits marriage *in Minnesota* within 6 months after the dissolution of a prior marriage of either party; Neb.Rev.St.1974, § 42–372, provides that a decree of dissolu-

---

1. Finding Iver Bogen in violation of an earlier temporary order to refrain from converting assets, the trial court ordered immediate conveyance of the remainder interest in the marital condominium and payment of the full $22,750 award for property settlement and attorneys fees to the clerk of court under Rule 67.03, Rules of Civil Procedure, and Minn.St. 518.24.

tion *in Nebraska* does not become final until 6 months after it is rendered; and Neb.Rev.St.1974, § 42–103, prohibits marriage while either party has a living spouse.[2] Iver Bogen argues that to allow a marriage within 23 days after the dissolution of the marriage of one of the parties would contravene both Minnesota and Nebraska law. We disagree.

Neb.Rev.St.1974, § 42–372, which provides that a dissolution decree is not final in Nebraska until 6 months after it is rendered, can apply only to Nebraska decrees rendered by Nebraska courts.[3] It has no application in this case since Martha Bogen's marriage to her former husband was dissolved in Minnesota. The full faith and credit clause of the United States Constitution requires that Nebraska must give the same final effect to a Minnesota decree of dissolution as it is given in Minnesota. *Sherrer v. Sherrer,* 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429 (1948). Under Minn.St. 518.27, a Minnesota decree of dissolution becomes final when entered; Martha Bogen's prior marriage was fully and finally dissolved when the Minnesota decree was entered. Therefore, 23 days later when the parties were married in Omaha, Nebraska, neither party had a living spouse so the marriage was not prohibited by Neb.Rev.St. 1974, § 42–103. We conclude that this marriage between Minnesota residents was validly contracted under Nebraska law.

Unless contrary to a strong public policy of this state, Minnesota recognizes a marriage of persons domiciled here as valid if it is valid under the law of the state where it was contracted. *In re Estate of Kinkead,* 239 Minn. 27, 57 N.W.2d 628 (1953). We are not persuaded that the prohibition of marriage in Minnesota within 6 months of the entry of a decree of dissolution under Minn.St. 517.03 expresses such a strong public policy as would void a marriage that is valid under the law of the state where contracted.[4] The marriage in this case is valid in Minnesota because it is valid under the law of Nebraska where it was contracted.

■ The second issue concerns the division of marital property and the award of attorneys fees. It is fundamental that the trial court is accorded broad discretion in dividing property upon dissolution of a marriage and will not be overturned on appeal except for a clear abuse of discretion. *Peterson v. Peterson,* 308 Minn. 297, 242 N.W.2d 103 (1976).[5]

Minn.St. 518.58 and 518.59 provide a standard by which to measure the propriety of the $20,000 cash settlement awarded to Martha Bogen.[6] Additionally, in *Ruprecht*

---

**2.** Neb.Rev.St.1974, § 42–372, provides in part: "A decree dissolving a marriage shall not become final or operative until six months after the decree is rendered, except for the purpose of review by appeal, and for such purpose only the decree shall be treated as a final order as soon as rendered."

Neb.Rev.St.1974, § 42–103, provides in pertinent part: "Marriages are void (1) when either party has a husband or wife living at the time of the marriage * * *."

**3.** As constitutionally required by the full faith and credit clause, the Nebraska Supreme Court has applied Neb.Rev.St.1974, § 42–372, only to decrees of divorce or dissolution rendered in the trial courts of Nebraska. See, e. g., *Klabunde v. Klabunde,* 194 Neb. 681, 234 N.W.2d 837 (1975); *Dewey v. Dewey,* 192 Neb. 676, 223 N.W.2d 826 (1974), modified, 193 Neb. 236, 226 N.W.2d 751 (1975); *Miller v. Miller,* 190 Neb. 816, 212 N.W.2d 646 (1973). The Nebraska court has apparently never been asked to apply § 42–372 to an out-of-state decree.

**4.** It is to be noted that Minn.St. 517.03 does not expressly declare a marriage in violation of its provisions *void,* as does § 518.01 relating to certain other prohibited marriages. Section 517.03 has in certain circumstances been held not to void a marriage contracted *within this state* in violation of it. See, e. g., *State v. Yoder,* 113 Minn. 503, 130 N.W. 10 (1911).

**5.** See, also, *Cooper v. Cooper,* 298 Minn. 247, 214 N.W.2d 682 (1974); *Bollenbach v. Bollenbach,* 285 Minn. 418, 175 N.W.2d 148 (1970); *Krohn v. Krohn,* 284 Minn. 95, 169 N.W.2d 389 (1969); *Cozik v. Cozik,* 279 Minn. 91, 155 N.W.2d 471 (1968).

**6.** Minn.St. 518.58 provides: "Upon a dissolution of a marriage, or upon an annulment, the court may make such disposition of the property of the parties acquired during coverture as shall appear just and equitable, having regard to the nature and determination of the issues in the case, the amount of alimony or support money, if any, awarded in the judgment, the

*v. Ruprecht,* 255 Minn. 80, 90, 96 N.W.2d 14, 23 (1959), we enumerated the factors which a trial court may properly consider in dividing marital property:

" * * * In exercising sound discretion the court may consider the ages of the parties and the earning ability of each; the conduct of their marriage and its duration; the station they occupy in life; the circumstances and necessities of each; the probability of continuing present employment into the future, as well as the capacity and ability to obtain new employment under changing circumstances and needs; the financial circumstances of the parties as shown by the property acquired, together with its value and income-producing capacity; the accumulated debts and liabilities if any; and all facts with respect to whether the property of the parties has been accumulated before or after marriage. The court may also consider all other matters disclosed by the evidence." [7]

 Considering these factors, we find no clear abuse of the trial court's discretion in awarding Martha Bogen a $20,000 cash settlement in lieu of alimony. The record shows a disparity in earning capacities and financial resources of the parties. The testimony supports a determination that Martha Bogen is unable to support herself at the level to which she has reasonably become accustomed, while Iver Bogen has continuing business income and social security payments which are adequate for his own support. Additionally, he has adequate cash funds available with which to pay the cash settlement awarded to Martha Bogen. There is evidence supporting the trial court's finding that she contributed

substantially to an increase in value of Iver Bogen's business during the 14½ years of their marriage. She and her husband were the only sales force for a business which depended heavily on personal contacts with customers. She accompanied her husband regularly on sales trips throughout the United States and abroad, and there was testimony that she was very successful in her personal contacts with customers. She also performed various office and warehouse tasks for the business. Disputed evidence placed the net increase in the value of the business over the 14½ years at either $83,000 or $96,000. By either figure, the $20,000 cash settlement awarded to Martha Bogen amounts to less than one-third of the total increase in net asset value acquired through the parties' joint efforts during their marriage. Based on less significant contributions than those of Martha Bogen, we have affirmed awards to the wife of one-half of the marital assets, *Cloutier v. Cloutier,* 261 Minn. 324, 112 N.W.2d 347 (1961), and one-third of the marital assets, *Krohn v. Krohn,* 284 Minn. 95, 169 N.W.2d 389 (1969); *Cooper v. Cooper,* 298 Minn. 247, 214 N.W.2d 682 (1974).

 The trial court also awarded a remainder interest in the marital condominium to Martha Bogen and ordered Iver Bogen to keep all principal and interest payments current under penalty of losing his life estate in the property. Iver Bogen challenges this award as contrary to the holding of *Johnson v. Johnson,* 284 Minn. 181, 169 N.W.2d 595 (1969). In Johnson, this court reversed the trial court, finding it an abuse of discretion to award each of the parties in a bitterly contested divorce undivided one-half interests in extensive land-

---

manner by which said property was acquired and the persons paying or supplying the consideration therefor, the charges or liens imposed thereon to secure payment of alimony or support money, and all the facts and circumstances of the case."

Section 518.59 provides: "Upon dissolution of a marriage, the court may also award to either spouse the household goods and furniture of the parties, whether or not the same was acquired during coverture, and may also order and decree to either spouse such part of

the real and personal estate of the other not acquired during coverture, not exceeding in present value one-half thereof, as it deems just and reasonable, having regard to the amount of property decreed under section 518.58, the amount of alimony and support money awarded, if any, and all other circumstances of the case."

7. See, also, *Cooper v. Cooper, supra; Messer v. Messer,* 289 Minn. 449, 184 N.W.2d 801 (1971). Each case must be evaluated on its own facts. *Krohn v. Krohn, supra.*

holdings acquired during the marriage, subject to further orders of the trial court. The trial court thus failed to make a final award of the real property in that case. This court disapproved of delaying the division of property in that manner, pointing out that the trial court had thereby inhibited the marketability of the property and effectively prolonged marital strife. The court said:

"Although we have approved an award of an undivided interest in the property acquired during coverture, we have done so only in those rare cases where special circumstances not only justified but, in fact, virtually compelled the trial court to make such a division of the property." 284 Minn. 184, 169 N.W.2d 597.

The primary objection to awarding undivided interests in marital property is that shared rights of occupancy normally accompany undivided interests. It was obviously the shared rights of occupancy which foreboded prolonged marital strife and prompted this court's concern in *Johnson v. Johnson, supra.* Unlike the decree in *Johnson,* however, the trial court's division of the condominium into a life estate and a remainder interest does not leave the right of occupancy indefinite. The same potential for prolonged marital discord is not present.

Minn.St. 518.63 [8] gives the trial court broad discretion to award one of the parties the right to occupy the parties' homestead, exclusive or otherwise. Under this statute, we have approved an award of an undivided, one-third interest in the homestead with exclusive rights of occupancy granted to the wife without any showing of special circumstances which would make an immediate sale and division of proceeds impracticable. *Zager v. Zager,* 295 Minn. 517, 202 N.W.2d 871 (1972).

Although no title or valuation problem preventing sale and immediate division of proceeds was shown in the present case, we

hold that the division of the condominium into a life estate and a remainder interest was well within the trial court's discretion under § 518.63. Indeed, we find this division to be an inventive and proper disposition of the property and well suited to the particular ages and needs of the parties. The equity in the condominium at the time of trial amounted to $7,100. Based upon Martha Bogen's support needs, the disparity in the parties' earning capacities, and Iver Bogen's ability to pay, the trial court could reasonably have concluded that Martha Bogen, at age 44, would require from her husband more than a portion of the $7,100 present equity for her future housing needs. By dividing the condominium as it did, the court found a way to award Martha Bogen the future benefit of the mortgage payments made by her husband, while giving Iver Bogen the present benefit of those payments during his lifetime.

 With respect to attorneys fees, it is well settled that the trial court has broad discretion to require one party to pay the attorneys fees of the other party if necessary to ensure the ability of the other spouse to protect his or her rights and interests. Minn.St. 518.14. An award of attorneys fees in a marriage dissolution action will not be disturbed on appeal absent a clear abuse of discretion. *Davis v. Davis,* 306 Minn. 536, 235 N.W.2d 836 (1975); *Borchert v. Borchert,* 279 Minn. 16, 21, 154 N.W.2d 902, 906 (1967). We find no such abuse, and under the facts and circumstances, the amounts awarded are reasonable.

Petitioner is allowed $400 attorneys fees on this appeal.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.

8. Minn.St. 518.63 provides: "The court, having due regard to all the circumstances and the custody of any children of the parties, may award to either party the right of occupancy of the homestead of the parties, exclusive or otherwise, upon a final decree of dissolution, or proper modification thereof, for such period of time as may be determined by the court, and such award of the right of occupancy of the homestead, whether exclusive or otherwise, may be in addition to the maximum amount which may be awarded under section 518.59."